1

2

3

4

5

6

7      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
8                 AT SEATTLE

9

10   MICHAEL MCCANN,                          CASE NO. C14-1728JLR

11                    Plaintiff,              ORDER REVERSING AND
                                              REMANDING FOR AWARD OF
12          v.                                BENEFITS

13   CAROLYN COLVIN,

14                    Defendant.

15                          I.      INTRODUCTION

16          Michael McCann appeals the final decision of the Commissioner of the Social

17   Security Administration ("The Commissioner"), which denied his applications for

18   Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under

19   Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-33 and 1381.

20   This is Mr. McCann's second appeal in this matter.  The court has considered the

21   Administrative Law Judge's ("ALJ") decisions, the prior district court opinion, the

22   administrative record ("AR"), and the parties' briefs.  Being fully advised, the court

1   REVERSES the Commissioner's final decision and REMANDS this action to the

2   Commissioner for an immediate award of benefits.

3                           **II.      BACKGROUND**

4          The facts of the case are set forth in the ALJ's decision (AR (Dkt. # 9) at 621-33),

5   the administrative hearing transcripts (AR at 640-744), and the briefs of the parties

6   (Opening Br. (Dkt. # 13); Resp. Br. (Dkt. # 16); Reply Br. (Dkt. # 17)).  They are only

7   briefly summarized here.

8          Mr. McCann asserts that he is disabled due to bipolar disorder, alleging an onset

9   date of January 15, 2006.  (AR at 175.)  He filed claims for SSI and DIB payments in

10  March 2008.  (AR at 156-60.)  The Commissioner denied Mr. McCann's claim initially

11  and on reconsideration.  (AR at 106-12, 116-28.)  Mr. McCann requested a hearing,

12  which took place on November 30, 2009.  (*See* AR at 28-101.)  On January 15, 2010, the

13  ALJ, following the SSA's five-step sequential process for determining whether a person

14  is disabled,[1] issued a decision finding Mr. McCann not disabled.  (AR at 12-23.)  The

15

16      [1]*See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-42
    (1987).  To establish disability, the claimant must show (1) he has not worked since the alleged
17  disability onset date, (2) he has a severe impairment, and (3) his impairment meets or equals a
    listed impairment or (4) his residual functional capacity precludes him from performing his past
18  work.  *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  In steps one through four,
    the burden of proof rests upon the claimant to establish a prima facie case of entitlement to
19  disability benefits.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  This burden is met
    once a claimant establishes that a physical or mental impairment prevents her from engaging in
20  her previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step five, the burden
    shifts to the Commissioner, who must show that the claimant is able to perform other work.  If a
21  claimant cannot do her past relevant work, the Commissioner must show that (1) the claimant
    can adjust to other work; and (2) specific jobs exist in the national economy that the claimant can
22  perform.  *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1193-94 (9th Cir. 2004).  If a
    claimant cannot adjust to other work in the national economy, the claimant is "disabled."  20
    C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

ALJ denied benefits based on his finding that Mr. McCann could perform a specific job existing in significant numbers in the national economy.  (*Id.*)  After reviewing additional evidence, the Social Security Administration's Appeals Council denied Mr. McCann's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  (AR at 1-6.)

On September 30, 2011, Mr. McCann timely filed an appeal in this court challenging the Commissioner's decision.  (AR at 774.)  The court held that the ALJ had erred by failing to provide legally adequate justification for discounting the opinions of Jane Knickerbocker and Dr. Eugene Kester, by rejecting the opinion of Martin Knutson without first developing the record, and by failing to provide adequate legal justification for discounting the testimony of Erica Horn.  (AR at 779-90.)  The court reversed the decision of the ALJ and remanded the case for reconsideration with instructions to develop the record, and to afford proper weight to these four sources or articulate legally sufficient reasons for not doing so.  (*Id.*)  After a second administrative hearing (*see* AR at 703-44), the ALJ again issued a decision finding that Mr. McCann was not disabled and was not entitled to benefits because jobs exist in significant numbers in the national economy that Mr. McCann could perform.  (AR at 621-33.)  Mr. McCann again appealed, arguing this time that the ALJ improperly discounted the opinions of Dr. Eugene Kester, Dr. Mary Anderson, Martin Knutson, and Erica Horn.  For the following reasons, the court agrees with Mr. McCann that the ALJ failed to provide legally sufficient reasons for rejecting these opinions.

//

1                                III.    ANALYSIS

2  **A.      Standard of Review**

3          Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision to

4  determine whether it is free from legal error and supported by substantial evidence in the

5  record as a whole.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).  "'Substantial

6  evidence' means more than a mere scintilla, but less than a preponderance; it is such

7  relevant evidence as a reasonable person might accept as adequate to support a

8  conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  The ALJ is

9  responsible for determining credibility, resolving conflicts in medical testimony, and

10 resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039

11 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may

12 neither reweigh the evidence nor substitute its judgment for that of the Commissioner.

13 *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  When the

14 evidence is susceptible to more than one rational interpretation, and the Commissioner's

15 conclusion is one such rational interpretation, that interpretation must be upheld.  *Thomas*

16 *v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The court may review only the reasons

17 stated by the ALJ "and may not affirm the ALJ on a ground upon which he did not rely."

18 *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d

19 871, 874 (9th Cir. 2003).

20 **B.      Evaluation of Evidence from "Acceptable Medical Sources"**

21         Only "acceptable medical sources" can "provide evidence to establish an

22 impairment." 20 C.F.R. § 404.1513(a).  Acceptable medical sources include licensed

1    physicians, psychologists, optometrists, podiatrists, and speech-language pathologists.

2    *Id.*  The Commissioner's own rules dictate that ALJs "must always carefully consider

3    medical source opinions about any issue, including opinions about issues that are

4    reserved to the Commissioner."  SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

5         In conjunction with the relevant regulations, the Ninth Circuit has "developed

6    standards that guide [the court's] analysis of an ALJ's weighing of medical evidence."

7    *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198

8    (9th Cir. 2008)).  The weight afforded to opinions of acceptable medical sources varies

9    based on the closeness of the treatment relationship; opinions of treating sources

10   generally receive more weight than those of examining sources, which in turn, generally

11   receive more weight than those of non-examining sources.  *Ryan*, 528 F.3d at 1198.  In

12   addition, "the weight afforded a non-examining physician's testimony depends 'on the

13   degree to which they provide supporting explanations for their opinions.'"  *Id.* at 1201

14   (quoting 20 C.F.R. § 404.1527(d)(3)).  In any case, "an ALJ errs when he rejects a

15   medical opinion or assigns it little weight while doing nothing more than ignoring it,

16   asserting without explanation that another medical opinion is more persuasive, or

17   criticizing it with boilerplate language that fails to offer a substantive basis for his

18   conclusions."  *Garrison*, 759 F.3d at 1012-13.  Instead, the ALJ "must set forth his own

19   interpretations and explain why they, rather than the doctors', are correct."  *Reddick v.*

20   *Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also* SSR 96-6p, 1996 WL 374180, at *2

21   (July 2, 1996) ("Administrative law judges and the Appeals Council . . . may not ignore

22   these opinions and must explain the weight given to the opinions in their decisions.").

1    For the reasons described below, the court concludes that, in this case, the ALJ failed to

2    satisfy this standard when evaluating the medical source opinions from Dr. Mary

3    Anderson and Dr. Eugene Kester.

4         **1.      Examining Psychologist Mary Anderson**

5         Mr. McCann argues that the ALJ erred by failing to give legally sufficient reasons

6    for discounting the opinions of Dr. Mary Anderson.  (Opening Br. at 11-13.)  Dr.

7    Anderson is a psychologist who examined Mr. McCann on November 6, 2012, and

8    provided her opinions.  (AR at 1417-27.)  These opinions were not addressed in the

9    ALJ's first decision or the court's prior opinion in this matter.  (*See generally* AR.)  In

10   the ALJ's second consideration of this matter, he gave "significant weight" to Dr.

11   Anderson's opinions that Mr. McCann "would have mild to moderate limitation in

12   cognitive function" and "could understand, remember, and carry out short, simple

13   instructions," but little weight to Dr. Anderson's opinions that Mr. McCann's "bipolar

14   symptoms could decrease his ability to maintain concentration," and that "he may

15   become agitated with attempting to adapt to changes in the workplace."  (AR at 627-28.)

16   Mr. McCann argues that the ALJ erred by not considering these opinions when

17   determining Mr. McCann's residual functional capacity ("RFC") (Opening Br. at 11-13.)

18   The court agrees that the ALJ's articulated reasons for discounting these opinions are not

19   legally sufficient.

20        The ALJ discounted Dr. Anderson's opinions that Mr. McCann's bipolar

21   symptoms could decrease his ability to concentrate and that he could become agitated by

22   changes in the workplace because he found that these statements were "vague" and did

1    not "indicate specific functional limitations." (AR at 628.) These conclusory criticisms

2    do not indicate why the opinions should be discounted; the ALJ failed to offer a

3    substantive basis for his conclusions. *See Garrison*, 759 F.3d at 1012-13 (noting that

4    "criticizing [opinions] with boilerplate language that fails to offer a substantive basis" is

5    error). As such, the ALJ's rejection of Dr. Anderson's opinions was error.

6         **2.      Consulting Physician Dr. Eugene Kester**

7         Mr. McCann also argues that the ALJ erred by failing to consider all the opinions

8    of state agency consulting physician Dr. Eugene Kester. (Opening Br. at 13-16.) In June

9    2008, Dr. Kester reviewed Mr. McCann's medical records and provided his opinion

10   regarding the extent of Mr. McCann's limitations. (*See* AR at 416-34.)

11        The ALJ, in his first decision in this matter, gave "significant weight" to Dr.

12   Kester's opinion and noted Dr. Kester's conclusions that Mr. McCann was able to

13   complete both non-complex tasks and "likely a variety of detailed tasks," had "only mild

14   to moderate limitations in all functional areas including social functioning and

15   concentration, persistence and pace," may struggle to maintain concentration for

16   extended periods, and "would do best either working independently or limited to small

17   groups of familiar co-workers." (AR at 19.) As the court noted in its prior order, the

18   ALJ accurately but incompletely summarized Dr. Kester's findings. Dr. Kester also

19   found that Mr. McCann was "moderately limited" as to "[t]he ability to work in

20   coordination with or proximity to others without being distracted by them" and "[t]he

21

22

1    ability to accept instructions and respond appropriately to criticism from supervisors."[2]

2    (AR at 431-32.)  The court assigned error to the ALJ's failure to address these particular

3    findings, noting that "[t]he ALJ did not address those limitations in the RFC assessment,

4    and did not include those limitations in the hypotheticals posed to the vocational expert."

5    (AR at 782.)  The court remanded the case for reconsideration with instructions that "[i]n

6    assessing RFC, the adjudicator must consider limitations and restrictions imposed by *all*

7    of an individual's impairments, even those that are not 'severe.'"  (*Id.* (emphasis in

8    original) (quoting SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2, 1996)).)

9        In his second decision in this matter, the ALJ's analysis regarding Dr. Kester's

10   opinions was almost identical to that in the first decision, and again did not address Dr.

11   Kester's findings that Mr. McCann was limited in his ability to work with others, accept

12   instructions, and respond appropriately to supervision.[3]  (AR at 628.)  The ALJ's second

13

14       [2] Dr. Kester also wrote in summary that "Mr. McCann would do best working alone or in
     a small, familiar group," that he "would do better 'with a supervisor who can convey the

15   assignments succinctly and then delegate without micromanaging,'" and that he would "need
     usual and customary breaks."  (AR at 433.)  The Commissioner argued that the ALJ did not err

16   by excluding these parts of Dr. Kester's opinion.  (Resp. Br. at 9-10 (citing *Valentine v. Comm'r
     Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009)).)  Unlike diagnoses or statements of

17   functional capacity, recommendations as to how a claimant might cope with particular symptoms
     are not opinions of limitation that must be included in an ALJ's RFC determination.  *Valentine*,

18   574 F.3d at 691-92.  Thus, the ALJ did not err by excluding Dr. Kester's summary
     recommendations when determining Mr. McCann's RFC.  *See id.*  The court explicitly rejected

19   this argument, however, as to Dr. Kester's medical opinions that Mr. McCann was moderately
     limited in the areas of working with others and accepting instructions and criticism.  (AR at 781-

20   82.)  The ALJ must consider these opinions from Dr. Kester because they are statements of
     functional capacity, not merely recommendations as to how Mr. McCann might best cope with

21   his symptoms.

22       [3] The ALJ's second opinion added that the ALJ gave "less weight" to Dr. Kester's
     opinion that Mr. McCann would "do better with a supervisor who can convey the assignments
     succinctly and then delegate without micromanaging," stating "[t]his is not a statement of

1   decision did add the statement that Dr. Kester's opinions were "not entirely consistent

2   with the claimant's own report that he cannot deal well with customers but has no

3   problem with coworkers."  (*Id.*)

4        An ALJ errs when he rejects a medical opinion by ignoring it or by asserting,

5   without explanation, that other evidence is more persuasive.  *Garrison*, 759 F.3d at 1012.

6   Here the ALJ rejected the medical opinions of Dr. Kester because they were "not entirely

7   consistent" with Mr. McCann's statements.  This reasoning is inadequate for two reasons.

8   First, the ALJ had already repeatedly rejected Mr. McCann's statements as unreliable,

9   yet, in this instance he chose, without explanation, to find Mr. McCann's statements more

10  convincing that the opinions of an acceptable medical source.  (AR at 625-27.)  Second,

11  while Mr. McCann did state to his therapists at Sound Mental Health that he had no

12  problem with coworkers, he also recounted, at the administrative hearing, multiple

13  incidents in which his behavior was inconsistent with that statement.  (*See* AR at 721-27.)

14  These incidents included yelling profanity and throwing things around the room in

15  response to minor irritations:  a Hero House member neglecting to answer the phone, and

16  another member mispronouncing a name when talking on the phone.  (AR at 723.)  These

17  incidents, which are also described in Mr. McCann's therapists' treatment notes (AR at

18  946) and referenced by Erica Horn in her testimony at the first administrative hearing

19

20  functional capacity but, rather, only a recommendation regarding the best-case workplace
    scenario."  (AR at 628.)  This statement is consistent with the court's prior order, but still fails to
21  address the specific medical opinions the court pointed to in its prior order, including Dr.
    Kester's opinions that Mr. McCann was "moderately limited" in "[t]he ability to work in
22  coordination with or proximity to others with being distracted by them" and "[t]he ability to
    accept instructions and respond appropriately to criticism from supervisors."  (AR at 431-32.)

1    (AR at 685), specifically indicate that Mr. McCann may have difficulty interacting

2    appropriately with coworkers.  Mr. McCann also described an incident in which he

3    berated another customer at the grocery store for returning a bag of ice.  (AR at 724.)

4    The ALJ failed to address any of this evidence in either his opinion or in the hypothetical

5    questions posed to the vocational expert at the second administrative hearing.  (*See* AR at

6    628; 736-39.)

7         The ALJ is responsible for determining credibility and resolving conflicts or

8    ambiguities, but he must explain his reasons for finding one piece of evidence more

9    persuasive than another.  *Andrews*, 53 F.3d at 1039.  In light of the record as a whole, the

10   ALJ failed to offer a sufficient explanation for disregarding Dr. Kester's opinions that

11   Mr. McCann was "moderately limited" in "[t]he ability to work in coordination with or

12   proximity to others with being distracted by them" and "[t]he ability to accept

13   instructions and respond appropriately to criticism from supervisors."  (AR at 431-32.)

14   The ALJ may not ignore these parts of Dr. Kester's opinion without articulating a legally

15   sufficient reason for doing so.

16        Thus, the ALJ erred by discounting the opinions of acceptable medical sources Dr.

17   Mary Anderson and Dr. Eugene Kester without articulating legally sufficient reasons for

18   finding their testimony unreliable or inconsistent.

19   **C.     Evaluation of Evidence from "Other Sources"**

20        In order to determine whether a claimant is disabled, an ALJ may consider

21   evidence from "other sources," including spouses, parents, siblings, and friends.  20

22   C.F.R. § 404.1513(d).  Testimony from other sources regarding a claimant's symptoms or

1   how an impairment affects the claimant's ability to work is competent evidence and

2   cannot be disregarded without comment.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467

3   (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  In order to

4   discount the testimony of a lay witness, the ALJ must provide "reasons that are germane

5   to each witness."  *Id.* at 919.  An ALJ must consider testimony from a lay witness even if

6   the opinions are not supported by medical evidence in the record, *Bruce v. Astrue*, 557

7   F.3d 1113, 1116 (9th Cir. 2009), but inconsistency with the medical evidence in the

8   record is a germane reason to discount lay witness testimony, *Bayliss v. Barnhart*, 427

9   F.3d 1211, 1218 (9th Cir. 2005).  When an ALJ discounts an opinion for being

10  inconsistent with the objective evidence in the record, he must discount only those

11  portions of the opinion that are actually inconsistent, not those parts which are

12  uncontradicted.  *See id.* (finding that the ALJ did not err when he rejected only the

13  portions of lay witness testimony that were inconsistent with the objective evidence in the

14  record).

15       Other sources also include medical sources not listed as "acceptable medical

16  sources," such as nurse practitioners, physicians' assistants, licensed clinical social

17  workers, and therapists.  20 C.F.R. § 404.1513(d)(1).  Because such persons "have

18  increasingly assumed a greater percentage of the treatment and evaluation functions

19  previously handled primarily by physicians and psychologists," their opinions "are

20  important and should be evaluated on key issues such as impairment severity and

21  functional effects, along with the other relevant evidence in the file."  SSR 06-03p, 71

22  Fed. Reg. 45593, 45595 (Aug. 9, 2006).  In addition, "depending on the particular facts in

a case, . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,'" and "[a]n opinion from a 'non-medical source' who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source." *Id.* at 45596.  For the following reasons, the court concludes that, in this case, the ALJ failed to satisfy this standard when evaluating the opinions of Martin Knutson and the testimony of Erica Horn.

### 1.    Treating Therapist Martin Knutson

Mr. McCann argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the opinions of Martin Knutson.  (Opening Br. at 8-11.)  Mr. McCann received treatment, including weekly therapy sessions, from Sound Mental Health beginning in June 2008 and continuing through at least September 2012.  (*See* AR at 915-1286.)  Although multiple therapists met with Mr. McCann and recorded their observations, Mr. Knutson was the lead clinician assigned to Mr. McCann during this period.  (*Id.*)  On October 27, 2009, Mr. Knutson submitted an opinion that Mr. McCann had "marked limitations in the ability to understand and remember simple instructions, to carry out detailed instructions and make simple judgments," and "moderate to marked limitations in the ability to interact appropriately with co-workers, supervisors and the public."  (AR at 515-29.)  Mr. Knutson's findings were "based on observations and interactions with the client [and] client reports."  (AR at 515.)

In his first consideration of the matter, the ALJ gave "less weight" to the opinions of Mr. Knutson because he found them to be unsupported by "clinical findings" and

1  inconsistent with Mr. McCann's "stated program goals." (AR at 20-21.) In Mr.

2  McCann's first appeal, the court held that "the record could have and should have been

3  supplemented" and instructed the ALJ to "request Mr. Knutson's treatment notes and

4  reassess Mr. Knutson's opinions in light of those notes. (AR at 787.) These treatment

5  notes were obtained and, in his second consideration of the matter, the ALJ gave "some

6  weight" to Mr. Knutson's opinion insofar as the ALJ found it to be "consistent with the

7  overall record." (AR at 629.) Specifically the ALJ gave some weight to Mr. Knutson's

8  findings that Mr. McCann "had only mild limitations in understanding, remembering, and

9  following complex instructions; mild limitations in learning new tasks; and only

10 moderate limitations in most areas of social function." (*Id.*) The ALJ disregarded Mr.

11 Knutson's opinions that Mr. McCann "had marked limitations in the ability to perform

12 simple instructions/tasks and marked limitations in most areas of social function" and that

13 Mr. McCann "cannot work on a consistent basis due to his symptoms, which include

14 significant periods during which [he] cannot ambulate quickly, cannot get out of bed for

15 several days, and cannot concentrate." (AR at 629-30.) The ALJ discounted Mr.

16 Knutson's opinions because he found them: (1) inconsistent with "the overall medical

17 record, the claimant's daily activities, and the claimant's work history"; (2) internally

18 inconsistent; (3) unsupported by objective findings or a specific rationale; or (4)

19 supported by objective findings that were not "entirely consistent" with "a disabling level

20 of impairment." (*Id.*) For the following reasons, the court agrees with Mr. McCann that

21 the ALJ erred in discounting the opinions of Mr. Knutson.

22

1   First, the ALJ provided no explanation for his assertions that Mr. Knutson's

2   opinions were inconsistent with the overall medical record, Mr. McCann's daily

3   activities, or his work history.  (*See* AR at 629-30.)  The ALJ's reasoning is not

4   sufficiently specific because it is not clear which opinions he finds to be inconsistent with

5   which parts of the record.  Only those opinions that are actually inconsistent may be

6   discounted.  *See Bayliss*, 427 F.3d at 1218.  The ALJ must provide an explanation for his

7   determination.  *See Van Nguyen*, 100 F.3d at 1467.

8   Second, the ALJ found Mr. Knutson's opinions that Mr. McCann "would have

9   marked limitation in following simple instructions but only mild limitation in performing

10  complex tasks" to be internally inconsistent.  (AR at 630.)  This conclusion is not

11  accurate when Mr. Knutson's report is considered as a whole.  Mr. Knutson specifically

12  notes in his observations that "[t]he client can become easily confused and distracted with

13  simple instructions" and "more complex instructions are easier."  (AR at 1445.)  These

14  opinions are also consistent with Mr. McCann's "[i]nflated self esteem."  (AR at 521.)

15  The ALJ does not explain how these two opinions are internally inconsistent in light of

16  Mr. Knutson's treatment notes and opinions as a whole.  The ALJ's decision to discount

17  these opinions is therefore not supported by substantial evidence.  *See Benecke v.*

18  *Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

19  Third, the ALJ claimed that Mr. Knutson's opinions were unsupported by

20  objective findings or a specific rationale.  Mr. Knutson's treatment notes, like all Mr.

21  McCann's providers' treatment notes from Sound Mental Health, contain detailed

22  descriptions of his conversations with Mr. McCann as well as descriptions of Mr.

ORDER- 14

1    McCann's physical appearance and affect for each week.  (*See, e.g.*, AR at 915, 919, 939,

2    946, 952, 957, 962, 977, 982, 988, 994, 1003.)  These objective findings are consistent

3    with Mr. Knutson's opinions.  (*See* AR at 946 (noting that Mr. McCann was "somewhat

4    pressured in speech" and discussing recent conflicts at Hero House); AR at 952 (noting

5    that Mr. McCann was "more quiet today than usual"); AR at 962 (stating that Mr.

6    McCann was "somewhat irritable"); AR at 994 (describing Mr. McCann's mood as

7    "dysphoric" and noting that he continues to have interpersonal conflicts).)  The ALJ's

8    conclusion, without explanation, that Mr. Knutson's opinions were unsupported by

9    objective findings or a specific rationale is unsupported by the record.

10           Fourth, the ALJ found that Mr. Knutson's objective findings were inconsistent

11   with "a disabling level of impairment" because Mr. Knutson "sometimes noted an

12   abnormal affect, irritability, and, rarely, pressured speech," but "typically recorded

13   unremarkable mental status findings."  (AR at 630.)  Bipolar disorder is characterized by

14   "the full symptomatic picture of both manic and depressive syndromes."  20 C.F.R. § 404

15   Subpt. P App. 1 12.04(A)(3).  Numerous sources report that the severity and type of Mr.

16   McCann's symptoms and impairment vary as he cycles between mania and depression.

17   (*See, e.g.*, AR at 413-16 ("When [Mr. McCann] is manic, he has marked limits that are a

18   bit different from the limits when he is depressed.  He is markedly limited in social when

19   depressed; unable to stay on task when manic."); AR at 515 ("Performance varies from

20   slight to marked based on current emotional state [and] severity of bipolar symptoms,

21   [that is] manic or depressive episodes which are frequent."); AR at 687 ("[His schedule]

22   varies . . . with his symptomology and his cycles."); AR at 687, 691 (describing Mr.

ORDER- 15

McCann's various symptoms and impairments when depressed and when manic); AR at 1460 (same).)  Thus, the ALJ's statement that "[p]rogress notes from Mr. Knutson and primary care notes from other providers indicated that Mr. McCann 'exhibited irritability and an abnormal affect only intermittently,'" is not necessarily inconsistent with a finding of disability.  An impairment need not be constant to be disabling so long as it occurs with sufficient regularity and intensity to prevent a claimant from engaging in substantial gainful activity.  *See Olson v. Schweiker*, 663 F.2d 593, 597 (5th Cir. 1981); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled.").  Without further explanation, the ALJ may not use the intermittent nature of Mr. McCann's impairments as a basis for disregarding Mr. Knutson's opinions.  Thus, the ALJ did not articulate a germane reason for discounting Mr. Knutson's opinion.

### 2. Erica Horn

Mr. McCann also argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the testimony of Erica Horn, the executive director of Hero House.  (Opening Br. at 3-8.)  Hero House is a non-profit organization that provides a day program with social and vocational opportunities for individuals with disabilities and mental illnesses.  (AR at 78-80.)  Erica Horn testified at the first administrative hearing regarding her interactions with Mr. McCann over the previous eighteen months.  (*See* AR at 78-93.)  In his first decision in this matter, the ALJ did not assign a specific level of weight to Ms. Horn's testimony, but stated that he discounted its weight because it (1) "generally reflect[ed] the same allegations made by the claimant"; and (2) was

1   inconsistent with "the opinions of the state medical consultants." (AR at 21.) In the prior

2   appeal, the court held that these were not germane reasons for discounting Ms. Horn's

3   testimony. (AR at 788-90.) In his second decision, the ALJ provided substantially the

4   same analysis, adding only that Ms. Horn's testimony was also inconsistent with Mr.

5   McCann's daily activities and work, and that his intermittent attendance was due to

6   serotonin syndrome, not his mental symptoms. (AR at 630-31.) For the following

7   reasons, the court holds that the ALJ erred by discounting the opinions of Ms. Horn as

8   they relate to her actual observations of Mr. McCann's daily functioning at Hero House.

9        First, the ALJ discounted Ms. Horn's testimony because it "generally reflect[ed]

10  the same allegations made by the claimant" (AR at 631), but as the court held previously,

11  "the unchallenged reasons given for discounting Mr. McCann's credibility are not

12  germane to Ms. Horn" because "[t]here is no logical connection" between Mr. McCann's

13  self-reports and "Ms. Horn's testimony regarding her observations of and interactions

14  with Mr. McCann" (AR at 789). In the first administrative hearing, Ms. Horn described

15  Mr. McCann's activities at Hero House, noting his difficulties keeping a regular

16  schedule, staying on task, completing projects, and interacting appropriately with other

17  members and supervisors. (AR at 80-93.) "The ALJ did not explain why inconsistencies

18  in Mr. McCann's self-reports would have any bearing on Ms. Horn's testimony regarding

19  her observations and interactions with Mr. McCann." (AR at 789.) The ALJ offered no

20  further explanation in his second decision (*see* AR at 631), despite the court's instruction

21  to do so (AR at 790).

22

1    Second, the ALJ discounted Ms. Horn's testimony because he found it was "not

2   supported by the objective medical evidence." (AR at 631.) As the court held in the

3   prior appeal, although Ms. Horn's experience and expertise may not qualify her to

4   provide opinions regarding Mr. McCann's medications and treatment potential, "the ALJ

5   did not explain how Ms. Horn's descriptions of Mr. McCann's actual *functioning*—which

6   constituted the bulk of her testimony—was inconsistent with the medical evidence." (AR

7   at 789 (emphasis in original).) Furthermore, the court held that Ms. Horn's testimony

8   was consistent with the improperly discounted opinions of Dr. Kester, and instructed the

9   ALJ to "reassess Ms. Horn's testimony in light of all of Dr. Kester's opinions." (AR at

10   789-90.) The ALJ did not address this instruction from the court. (See AR at 630-31.)

11    Third, the ALJ added the finding that Ms. Horn's opinion that Mr. McCann "does

12   not keep a regular schedule due to his symptomology" was inconsistent with Mr.

13   McCann's daily activities and work, which "[did] not show disabling restrictions due to

14   the claimant's 'stages of mania.'" (AR at 631.) It is unclear why Mr. McCann's daily

15   activities, such as hygiene, grooming, and use of transportation, and inconsistent part-

16   time work history, would be inconsistent with Ms. Horn's opinion that he does not keep a

17   regular schedule at Hero House. (AR at 785) The ALJ must articulate sufficiently

18   specific reasons for the claimed inconsistency. *See Bayliss*, 427 F.3d at 1218; *Van

19   Nguyen*, 100 F.3d at 1467. The court does not find the evidence to be inconsistent; the

20   ALJ's unsupported conclusion to the contrary does not constitute a germane reason for

21   discounting Ms. Horn's testimony.

22

1    Fourth, the ALJ found that, even if Mr. McCann kept an irregular schedule, this

2    was due to serotonin syndrome, not his mental symptoms.  (AR at 631.)  Serotonin

3    syndrome, however, is a side effect of Mr. McCann's medication.  (*See* AR at 1465.)

4    Thus, it is a direct consequence of his mental symptoms and cannot be discounted.  *See*

5    SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2, 1996).  In sum, the ALJ did not articulate a

6    germane reason for discounting Ms. Horn's testimony about her observations of Mr.

7    McCann's actual daily functioning and the severity of his impairments as they relate to

8    his activities at Hero House.  He therefore erred by ignoring this testimony.  *See Van*

9    *Nguyen*, 100 F.3d at 1467.

10   **D.    Remand for Award of Benefits**

11       Usually, "[i]f additional proceedings can remedy defects in the original

12   administrative proceeding, a social security case should be remanded."  *Lewin v.*

13   *Schweiker,* 654 F.2d 631, 635 (9th Cir.1981).  The court has discretion to remand the case

14   for an immediate award of benefits, however, when the three-part credit-as-true rule is

15   satisfied.  *Garrison*, 759 F.3d at 1020.  This framework requires the court to find that (1)

16   the record has been fully developed such that further administrative proceedings would

17   serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

18   rejecting evidence; and (3) "if the improperly discredited evidence were credited as true,

19   the ALJ would be required to find the claimant disabled on remand."  *Id.*  Even when

20   these three elements are met, the court may decline to remand a case for an award of

21   benefits "when the record as a whole creates serious doubt as to whether the claimant is,

22   in fact, disabled within the meaning of the Social Security Act."  *Id.* at 1021; *see also*

1   *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014) ("[A]n

2   ALJ's [error] does not, without more, require the reviewing court to credit the claimant's

3   testimony as true."); *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (noting

4   courts have "some flexibility" in applying the credit-as-true rule).

5        The credit-as-true rule ensures testimony will be carefully assessed and

6   discourages ALJs from ignoring competent evidence; avoids unnecessary duplication in

7   administrative hearings and reduces administrative burden; and reduces delay and

8   uncertainty so that "deserving claimants will receive benefits as soon as possible."[4]

9   *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398-99 (9th Cir. 1988). The

10   court may not award benefits punitively, however, or when it is not clear on the record

11   that the claimant is entitled to benefits. *Strauss*, 635 F.3d at 1138. "A claimant is not

12   entitled to benefits under the statute unless the claimant is in fact disabled, no matter how

13   egregious the ALJ's errors may be." *Id.*; *see also Briscoe ex rel. Taylor v. Barnhart*, 425

14   F.3d 345, 357 (7th Cir. 2005) ("Obduracy is not a ground on which to award benefits; the

15   evidence properly in the record must demonstrate disability.").

16        Here the court concludes that the credit-is-true rule is satisfied and that remand for

17   an immediate award of benefits is appropriate.[5] First, the record has been fully

18   _____

19      [4] The credit-as-true rule has been applied to claimant testimony, and both acceptable and other source medical providers. *Garrison*, 759 F.3d at 1022. In light of the articulated policy

20   concerns justifying the rule, the court sees no reason why the rule should not apply with equal force to the opinions of lay witnesses such as Ms. Horn. *See Strauss*, 635 F.3d at 1138

21   (reversing the district court for awarding benefits without analyzing the case under the credit-as-true framework where the improperly excluded evidence included evidence from lay witnesses).

22      [5] Although Mr. McCann raised many of the same objections in his first appeal, and the ALJ provided much of the same analysis, remand for an award of benefits was not appropriate, at

1   developed such that further administrative proceedings would serve no useful purpose.

2   There have been two administrative hearings, including testimony from two vocational

3   experts.  (*See* AR at 640-744.)  The record contains nearly 1,500 pages of medical

4   reports, treatments notes, and hearing transcripts detailing Mr. McCann's symptoms and

5   functional capacity.  (*See generally* AR.)  Allowing the ALJ to revisit the medical

6   opinions and other testimony that he twice rejected for legally insufficient reasons would

7   serve no useful purpose.  *Garrison*, 759 F.3d at 1021-22; *see also Benecke*, 379 F.3d at

8   595 ("Allowing the Commissioner to decide the issue again would create an unfair

9   'heads, we win; tails, let's play again' system of disability benefits adjudication."); *Moisa*

10  *v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this

11  appeal, should not have another opportunity to show that [the claimant] is not credible

12  any more than [the claimant], had he lost, should have an opportunity for remand and

13  further proceedings to establish his credibility.").

14      In addition, further proceedings are not necessary to determine RFC where, as

15  here, the vocational expert has already answered questions describing a hypothetical

16  person with the RFC that the claimant would possess if the discounted opinions were

17  taken as true.  *See, e.g.*, *Lingenfelter*, 504 F.3d at 1041; *Varney*, 859 F.2d 1401.  The

18  vocational expert at the second administrative hearing testified that disruptive behaviors

19

20  that time because the record had not yet been fully developed.  (*See* AR at 787.)  The court
    instructed the ALJ to obtain Mr. Knutson's treatment notes before reconsidering the matter.  (*Id.*)
21  Those treatment notes are now included in the record.  (*See* AR at 915-1286.)  In addition, the
    vocational expert at the second administrative hearing testified to the ability of a person with Mr.
22  McCann's limitations to sustain competitive work activity.  (AR at 740-41.)  This testimony was
    not before the court on the first appeal.

1  such as "yelling or using profanity or otherwise acting out . . . are not acceptable in the

2  workplace," that an individual who "would not follow directions from a supervisor

3  without arguments" would not "be able to sustain competitive work activity," and that

4  being absent from work "two or more days a month would preclude employment." (AR

5  at 740-41.) Additionally, as of the date of this opinion, Mr. McCann has waited more

6  than seven years for a final decision on his application for disability benefits. (*See* AR at

7  156-60.) Further administrative proceedings in this matter would serve no useful purpose

8  and would only delay a final decision. *See Varney*, 859 F.2d at 1399.

9      Second, as described at length above, the ALJ failed to provide legally sufficient

10  reasons for rejecting the testimony of Dr. Anderson, Dr. Kester, Mr. Knutson, and Ms.

11  Horn. *See supra* Part III.B-C.

12      Third, if that improperly discounted evidence were credited as true, the ALJ would

13  be required to find Mr. McCann disabled. "At this stage of the credit-as-true analysis,

14  [courts] do not consider arguments against crediting evidence that the ALJ did not make."

15  *Garrison*, 759 F.3d at 1022 n.29 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88

16  (1943)). As described above, the arguments advanced by the ALJ are conclusory and fail

17  to provide substantial evidence to justify a denial of benefits. The testimony of Ms. Horn

18  and opinions of Mr. Knutson indicate that Mr. McCann has moderate to marked

19  limitations in his ability to interact appropriately with co-workers, supervisors, and the

20  public and that he does not keep a regular schedule. *See supra* Part III.C. Their

21  testimony, in conjunction with that of the vocational expert, establishes that a person with

22  Mr. McCann's limitations would not be able to maintain competitive employment. (See

ORDER- 22

1  AR at 740-41.)  Thus, if this testimony is credited as true, the ALJ would have no choice

2  but to find Mr. McCann disabled.

3         The court exercises its discretion to apply the credit-as-true rule to the improperly

4  excluded testimony because the record as a whole does not create serious doubt that Mr.

5  McCann is in fact disabled.  *See Treichler*, 775 F.3d at 1106.  The court has

6  independently reviewed the entire record and has found nothing that would create doubt

7  that Mr. McCann is entitled to the benefits he seeks.  Moreover, the Commissioner does

8  not point to anything in the record that the ALJ overlooked and that would cast serious

9  doubt on Mr. McCann's claim, nor does the Commissioner advance any argument the

10  court has not already carefully considered and rejected.  (*See generally* Resp.)

11         The record reflects that, since January 15, 2006, Mr. McCann has suffered from

12  bipolar disorder, which makes it difficult for him to work with or in proximity to others,

13  to accept instructions or feedback, and to keep a regular schedule.  According to the

14  vocational expert, these limitations would prevent an individual from sustaining

15  competitive work activity.  (AR at 740-41.)  Thus, the ALJ erred in determining Mr.

16  //

17  //

18  //

19  //

20  //

21  //

22  //

ORDER- 23

1   McCann's RFC, and it is clear on the record that Mr. McCann is disabled according to

2   the SSA's five-step sequential process.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  He

3   should be awarded the benefits that he seeks.

**CONCLUSION**

5   For the foregoing reasons, the court REVERSES the final decision of the

6   Commissioner and REMANDS this case for an immediate award of benefits.

7   Dated this 10th day of June, 2015.

JAMES L. ROBART
United States District Judge